**HERTZBERG & NOVECK,**
**Plaintiff-Appellee,**

v.

**Ira J. SPOON, Defendant-Appellant.**

**No. 80–1776.**

United States Court of Appeals,
Sixth Circuit.

Argued March 8, 1982.

Decided June 25, 1982.

Before ENGEL and KENNEDY, Circuit Judges, and BALLANTINE,* District Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Defendant-appellant, Ira J. Spoon ("Spoon") appeals the judgment of the District Court ordering him to pay $14,200.00 in legal fees to plaintiff-appellee law firm. He asks us to hold that the agreement on which the District Court predicated liability was so ambiguous as to be unenforceable and that the District Court lacked *in personam* jurisdiction over him. For the reasons stated herein, we find the agreement enforceable and the assertion of jurisdiction proper, but remand the case to the District Court to determine properly the precise amount of Spoon's liability.

Ira J. Spoon and his brother Lionel engaged the services of the plaintiff in the late 1960's to assist them in a tax matter. At the time, both brothers resided in Michigan where the plaintiff law firm is located. The services were rendered in Michigan as well. The law firm billed the brothers $40,000.00 for their services. The Spoons never contested the quality of the legal work rendered, only the amount of the bill. The bill remained unpaid and the plaintiff permitted Michigan's six-year statute of limitations to expire. M.C.L.A. § 600.5807(8). Plaintiff then negotiated for payment with Lionel and Ira J. Spoon separately.

By this time, however, defendant Spoon had moved to California. The negotiations with him for payment of the indebtedness took place in California when one of plaintiff's attorneys travelled there to effectuate a compromise of plaintiff's claim. It is clear that plaintiff initiated phone calls from its Michigan office to California to discuss the financial arrangements of the settlement with the defendant. The agreement was concluded in California. There is

Richard E. Zuckerman, Fred A. Foley, Raymond, Rupp & Wienberg, Troy, Mich., for defendant-appellant.

Daniel Noveck, Adelson & Noveck, Southfield, Mich., for plaintiff-appellee.

* Honorable Thomas A. Ballantine, Jr., United States District Court for the Western District of Kentucky, sitting by designation.

some dispute as to whether the first installment was mailed from California to Michigan or whether it was hand-delivered to plaintiff's representative while he was in California. Clearly, though, all subsequent payments were to be made in Michigan.

The agreement provided:

> In accordance with our meeting and telephone conversations concerning your statement for services relating to [tax audits] ... I agree to pay the sum of Fourteen Thousand Five Hundred Dollars for all such services payable at the rate of Three Hundred Dollars per month ....
>
> In the event that my brother, Lionel Spoon, shall pay any lesser sum than $14,-500.00 for same services, then the above stipulated sum shall be adjusted downward; proof of same shall be supplied to the undersigned upon request....

When Spoon failed to pay this substituted amount, plaintiff instituted this suit in the United States District Court for the Eastern District of Michigan asserting diversity of citizenship. Three counts were alleged. First, plaintiff asked for $20,000.00, the amount of the original obligation. Since the statute of limitations had clearly expired, the District Court properly awarded summary judgment for defendant on this count. The court disposed of plaintiff's claim for recovery of $20,000.00 under *quantum meruit*, the second count, on the same grounds. The third count prayed for $14,500.00, the amount called for under the substituted agreement. On this count the District Court awarded summary judgment for plaintiff for $14,200.00, one $300.00 payment having already been made. It is this decision which defendant appeals.

Defendant first argues that the new agreement was indeterminate in amount and therefore unenforceable. Second, defendant asserts that the amount finally due plaintiff cannot be determined from the substituted agreement. The assertion of diversity jurisdiction was therefore improper since the District Court could not determine whether the amount in controversy requirement was satisfied. Third, defendant argues that even if the agreement was enforceable and definite enough as to the amount in controversy, personal jurisdiction was improper because all relevant contacts with respect to the new agreement were in California; hence, jurisdiction would be proper only in California. Plaintiff, on the other hand, asserts that considering just those contacts which defendant had with the forum state in negotiating the substituted agreement, jurisdiction would be properly based in Michigan. Moreover, plaintiff contends that Michigan courts would combine the defendant's contacts with the forum in originally contracting for plaintiff's services and in negotiating the substituted agreement in order to provide a basis for jurisdiction.

## ENFORCEABILITY

Defendant's argument that the substituted agreement is so ambiguous that it is unenforceable is meritless. The agreement contains an absolute promise to pay a specified amount ($14,500.00); only upon a certain condition subsequent, namely, Lionel's failure to pay $14,500.00 is Ira's liability reduced. As a federal court sitting in diversity, the District Court was required to apply Michigan law. Under Michigan law, Spoon's promise is definite enough to be enforced as a revival. M.C.L.A. § 600.5866 provides:

> Express or implied contracts which have been barred by the running of the period of limitation shall be revived by the acknowledgment or promise of the party to be charged. But no acknowledgment or promise shall be recognized as effective to bar the running of the period of limitations or revive the claim unless the acknowledgment is made by or the promise is contained in some writing signed by the party to be charged by the action.

Defendant argues that Michigan would not enforce such a conditional promise as that contained in Spoon's revival. It is clear to us, however, that Michigan indeed would enforce such an obligation. Equally uncertain arrangements have been enforced before. *See, e.g., Lungerhausen v. Critten-*

*den*, 103 Mich. 173, 174–5, 61 N.W. 270 (1894) (promise by defendant to pay plaintiff attorneys as much as defendant paid to another attorney enforced despite claim that contract uncertain; "[w]hatever of uncertainty existed was the uncertainty that might arise from or grow out of a contingency, which might have resulted in a failure of consideration, but did not."); *Illinois Roofing & Supply Co. v. Aerial Advertising Co.*, 142 Mich. 698, 106 N.W. 274 (1906).

The cases relied upon by defendant are unavailing. In *Glass v. Drieborg*, 296 Mich. 30, 295 N.W. 547 (1941), the Court stated that contingent promises to pay a debt barred by the statute of limitations would not be enforced. However, at the same time the underlying liability was admitted, the debtor in *Glass* stated that he had no intention of paying that liability.

> 'It has ever since been recognized in England and generally in the United States, that the effect of an admission of acknowledgment is merely that of evidence of a promise implied in fact. And if, taking all the circumstances into account, the admission does not indicate an intention to pay, no liability arises from it.'
>
> *   *   *   *   *   *
>
> [T]he acknowledgment ought to contain an unqualified and direct admission of a present subsisting debt which the party is liable and willing to pay, and be unaccompanied by any circumstances or declarations which repel the presumption of a promise or intention to pay. (citations omitted).

*Id.* at 34–5, 295 N.W. 547. Here, the requirements of the *Glass* case are met. We in fact have an unqualified promise to pay a subsisting debt. No evidence indicates that contemporaneously with making the revival Ira J. Spoon did not intend to pay.

Similarly, in *Halladay v. Weeks*, 127 Mich. 363, 86 N.W. 799 (1901), the Court held that a promise to pay "as soon as I can" was too conditional to make the revival effective. We are not presented with so tenuous a promise; rather, in the instant case only the final amount due is arguably uncertain. And, as we have already seen, that kind of uncertainty has been insufficient to prohibit enforcement of a valid contractual obligation. In *Rumsey v. Settle's Estate*, 120 Mich. 372, 79 N.W. 579 (1899), the promise was sufficiently definite where the debtor promised to pay "every cent I owe you," although the precise amount was not specified. We find the reasoning behind *Rumsey* to be applicable here.

## AMOUNT IN CONTROVERSY

In an analogous argument, defendant claims that since the amount he ultimately owes is indeterminate, plaintiff could not satisfy the amount-in-controversy requirement prerequisite to diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1).

In *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), the Court reiterated the long-standing rule that "the jurisdictional amount of $10,000 . . . is established as long as it does not 'appear to be a legal certainty' that the matter in controversy does not total $10,000 . . .". *Id.* at 642 n.10, 95 S.Ct. at n.10. *See also Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 276–7, 97 S.Ct. 568, 570–71, 50 L.Ed.2d 471 (1977); *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). We have little difficulty concluding that plaintiff has satisfied the amount-in-controversy requirement by pleading for recovery of $14,500.00. Certainly defendant cannot successfully argue that it appeared to a "legal certainty" that plaintiff was not entitled to such an amount.

## MINIMUM CONTACTS

The issue of whether the District Court improperly asserted *in personam* jurisdiction over the defendant is not so easily resolved. There are two separate inquiries that must be made. First, whether Michigan courts would assert jurisdiction, and second, if so, whether such an assertion would be constitutional.

Michigan's long-arm statute, M.C.L.A. § 600.705 provides:

The existence of any of the following relationships between an individual ... and the state shall constitute a sufficient basis of jurisdiction to enable a court ... to exercise limited personal jurisdiction over the individual ....

(1) The transaction of any business within the state....

Michigan has construed its statute to reach the broadest scope of jurisdiction consistent with due process safeguards. *See, e.g., Schneider v. Linkfield*, 389 Mich. 608, 616, 209 N.W.2d 225 (1973). In *Sifers v. Horen*, 385 Mich. 195, 199 n.2, 188 N.W.2d 623 (1971), the Court noted that Michigan's long-arm statute provides jurisdiction to state courts if *any* business is conducted within the state; the Court stated that "any" means "each" and "every", comprehending even "the slightest" business. We must therefore decide if defendant's forum-related contacts surrounding the repayment of his contractual obligations are sufficient contacts for jurisdictional purposes.

■ We are convinced that in view of the broad interpretation Michigan has given to its long-arm statute's requirement of "transaction of any business," Michigan would combine the defendant's contacts in executing the original agreement for legal services and in executing the revival to arrive at a basis for extending jurisdiction. While this is a case of first impression in Michigan, prior Michigan case law interpreting its long-arm statute and its revival statute bears out our perception.

In *Kiefer v. May*, 46 Mich.App. 566, 208 N.W.2d 539 (1973), the court concluded that a single contact with the state does not automatically preclude jurisdiction. In *Kiefer*, the defendant had advertised a Cadillac for sale in a national magazine. Plaintiff, a Michigan resident, read the ad and arranged to purchase the car by telephoning the defendant in Arizona. He wired his deposit from Michigan. Finding that the telephone and the mails were utilized to consummate the contract, the court determined that jurisdiction was proper notwithstanding the fact that the plaintiff was the initiator of the phone calls.

In *Parish v. Mertes*, 84 Mich.App. 336, 269 N.W.2d 591 (1978), the court permitted the attachment of jurisdiction where plaintiff sought to collect on a note. While defendants' contacts with Michigan were minimal, the court focused on the use of the phone to arrange the note's payment schedule and the fact that the note was payable in Michigan:

Furthermore, the loan agreement and the promissory note state that the place of payment was at plaintiff's home in Detroit, Michigan. Together with the telephone calls, this contact, looked at qualitatively if not quantitatively, is sufficient to confer jurisdiction .... Defendants signed the agreement ... knowing the place of payment was Michigan. They should reasonably have expected that they would be subject to jurisdiction in Michigan as long as adequate notice and the opportunity to be heard were provided.

*Id.* at 342, 269 N.W.2d 591. Similarly, in the case *sub judice*, Spoon often spoke with the plaintiff law firm on the phone and knew that his revival was to be paid in Michigan. These cases illustrate the determination of the Michigan courts to go to the greatest length possible to provide a forum for its residents.

Moreover, the very fact that Michigan characterizes Spoon's substitute agreement as a *revival* indicates that it would be willing to combine contacts to arrive at a proper predicate for jurisdiction. From the language of the statute itself, M.C.L.A. § 600.-5866, *supra*, it appears that Michigan would not treat the revival as a separate transaction apart from the original obligation underlying it. Rather, the substituted agreement *revives* the preceding debt. Logically, if the revival revives the old debt, it should likewise revive the old contacts. If Spoon's contacts in agreeing to have the plaintiff defend him in his tax audit are taken into account, obviously sufficient contacts exist upon which to base jurisdiction.

In *Hebinger v. Ross*, 175 Mich. 241, 141 N.W. 629 (1913), suit was brought by plaintiff to recover on a contract to supply logs.

The precise amount due was disputed. Defendant sent a letter acknowledging receipt of the logs and a check for the amount he considered due. Before plaintiff sued, the statute of limitations ran. The Court refused to distinguish between a promise to pay an already barred debt and an acknowledgment of a debt not yet barred by the statute of limitations. The Court spoke of any promise "relied upon to *revive* or *restore* a demand," *id.* at 248, 141 N.W. 629 (emphasis supplied), adopting the notion that a revival is analogous to a tolling provision. Clearly, if Spoon's debt had been tolled rather than revived the District Court would have been entitled to consider the contacts Spoon had with Michigan in first contracting for plaintiff's services.[1] We see no principled basis for treating the revival under § 600.5866 differently than a tolling.[2]

Having concluded that Michigan would combine contacts and hence attempt to extend jurisdiction over Spoon, we next confront the issue of whether such an extension is constitutional.[3] We have little difficulty in concluding that it is.

In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court reaffirmed the "minimum contacts" test originally set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The "defendant's contacts with the forum State must be such that maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice." ' " *World-Wide Volkswagen, supra,* 444 U.S. at 292, 100 S.Ct. at 564. The minimum contacts test is a flexible standard which responds to different factual situations. In the instant case it cannot be said that it offends traditional notions of fair play to require Spoon to defend his contract of revival in Michigan. Spoon can be fairly said to have purposefully availed himself of the opportunity to conduct activities in the forum state. While " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause," *World-Wide Volkswagen, supra,* at 295, 100 S.Ct. at 566, clearly Spoon could have foreseen here that he could be "haled into court" in Michigan when he failed to live up to his contractual obligations. *Id.* at 297, 100 S.Ct. at 567. This is particularly so since the revival agreement provided that the money was due and payable in Michigan. Without Spoon's contacts with the forum state in entering into his original contract for legal services, there would be neither the necessity nor the consideration for the revival. The mere fact that the plaintiff permitted the statute of limitations to expire should not wipe out the defendant's contacts. These contacts are similar to those contacts made in the preliminary negotiation stages of an ordinary contract; all contacts which relate to the ultimate agreement are considered in evaluating jurisdiction. There is no constitutional requirement that we ignore Spoon's prior

---

1. Two other Michigan cases do not portend otherwise. In *Carr v. Carr*, 138 Mich. 396, 101 N.W. 550 (1904), two brothers entered into a mortgage for $5000. The mortgagee, never having been paid, agreed to accept $500 in settlement of the mortgage. He died before the agreement was accomplished. His heirs then sued for the full $5000. The statute of limitations had long ago run on the $5000. While the mortgagor's acknowledgment of the debt was held not to have tolled the statute of limitations, recovery was still had for the substituted amount—$500. While *Carr* does indicate that full acknowledgment of the amount owed is necessary to toll the statute of limitations on the original debt, the amount here was in controversy; defendant never had agreed to the $20,000 fee. Moreover, in *Carr*, there was no statute such as M.C.L.A. § 600.5866.

In *McCarron v. Wheeler*, 151 Mich. 222, 114 N.W. 1028 (1908), the Court stated the logical principle that a debt cannot be revived by a subsequent transaction having no relation whatever to the former debt. We are not confronted with that problem here. Furthermore, the negative pregnant of the Court phraseology is that the old debt would be revived if the two transactions share a common nucleus.

2. The statute discusses acknowledgments which revive the claim and those that *bar the running* of the period of limitations . . . ." M.C.L.A. § 600.5866 (emphasis supplied).

3. We need not decide whether it would be permissible for Michigan to extend jurisdiction based solely on defendant's contacts with the forum in executing the revival.

contacts with the forum in assessing the reasonableness and fairness of conferring jurisdiction on Michigan. We conclude, therefore, that it is not unconstitutional for Michigan to consider Spoon's total contacts with the forum in asserting *in personam* jurisdiction over him.

Accordingly, the decision of the District Court finding personal jurisdiction over defendant Spoon is affirmed. That part of the opinion awarding summary judgment to plaintiff for $14,200.00 is vacated. The cause is remanded to the District Court to permit a determination of the amount actually paid by Lionel Spoon and for entry of judgment in either that amount or in the amount of $14,200.00, whichever is lesser.

IT IS SO ORDERED.